Lou SHAW

v.

**Richard LINDHEIM et al.**

**No. CV 87–6926 AHS.**

United States District Court, C.D. California.

Sept. 4, 1992.

Lawrence P. Grassini, John C. Torjesen, Hurley Grassini & Wrinkle, North Hollywood, CA, for plaintiff.

Louis P. Petrich, Edward A. Ruttenberg, Gary M. Grossenbacher, Leopold Petrich & Smith, Los Angeles, CA, for defendants.

## OPINION GRANTING DEFENDANTS' MOTION FOR JUDGMENT AS A MATTER OF LAW; CONDITIONALLY GRANTING DEFENDANTS' MOTION FOR NEW TRIAL

STOTLER, District Judge.

### I.

### BACKGROUND

Like his character "The Equalizer," plaintiff Lou Shaw has been attempting to "equalize the odds" against him in a five-year court battle that has taken him from this Court to the Ninth Circuit and back again.

Lou Shaw is a well-known writer and producer in Hollywood; defendant Richard Lindheim is an entertainment industry executive who was in the Dramatic Programming Division of NBC Television when he entered into a February, 1978 option contract with Shaw granting NBC the option to develop a pilot script created by Shaw, "The Equalizer," into a television series; defendant Michael Sloan wrote the pilot script for defendants' television series "The Equalizer" in 1982, the pilot episode of which aired on CBS in 1985.

As this Court described previously, "[t]he theme of both [plaintiff's script and defendants' pilot episode] revolves around the main character, the Equalizer—'a man who will equalize the odds, a lone man working outside the system to protect his underdog clients and to resolve their predicaments as a part of his rough notion of justice ...' both works involve a cover up/ blackmail conspiracy and a woman who is in jeopardy, however, in defendants' work the main character takes on two cases whereas [Shaw's] Equalizer has only one client ... both works involve a criminal organization that blackmails a public official. The defendants' Equalizer, however, involves a tight blackmail ring, operated out of the corporate headquarters of a telecommunications company in New York City, whereas [Shaw's] criminal organization is described as a Mafia that controls the Boyle Heights Chicano Community of Los Angeles." *Shaw v. Lindheim*, 919 F.2d 1353, 1357–58 (9th Cir.1990) (quoting this Court's Order). The lead characters in both plaintiff's and defendants' works also contain various similarities: "[i]n defendants' story, McCall, the former spy turned Equalizer is motivated by past wrongs and seems intent on helping any underprivileged person who face insurmountable odds. [Shaw's] lead character, Jericho, also seeks to prevent injustice ... both are well educated, wealthy and have expensive tastes...." *Id.* at 1358 (quoting this Court's Order).

On November 17, 1987, Shaw filed this action for, among other claims, copyright infringement, alleging that defendants Sloan and Lindheim copied his 1978 script to produce "The Equalizer" television series, which was substantially similar to the script he submitted to Lindheim. Defendants moved for summary judgment on August 8, 1988. This Court granted defendants' motion on October 28, 1988, finding that as a matter of law the protectible expression in the works was not substantially similar under the intrinsic or subjective test of *Sid & Marty Krofft Television Prods. Inc. v. McDonald's Corp.*, 562 F.2d 1157, 1164 (9th Cir.1977).

The Ninth Circuit reversed and remanded, concluding that since Shaw had "satisfied the extrinsic [or objective] test for [copyright infringement] of literary works" he "presented a triable issue of fact regarding substantial similarity of protected expression." *Shaw*, 919 F.2d at 1363.

On remand, plaintiff pursued only his copyright infringement claim and the parties stipulated that plaintiff's action was

based solely on the alleged infringement of his "Equalizer" script by defendants' pilot episode of "The Equalizer" television series.

## II.

### THE TRIAL

At trial upon remand, the parties presented the following stipulated facts to the jury: (1) that Lou Shaw wrote a script entitled "The Equalizer," which he registered at the Copyright Office on September 25, 1987; (2) that Mr. Shaw filed a supplemental registration for the work on October 20, 1988, advising the Copyright Office that his script was derived from an earlier outline or "treatment" also authored by him, a fact which was not known to or considered by this Court or the Court of Appeals when it reviewed this Court's grant of summary judgment; (3) that Universal City Studios, Inc., registered the pilot episode of "The Equalizer" television series with the Copyright Office on November 26, 1985, listing Universal as the author; and (4) defendant Sloan received sole "written by" credit while Sloan and Lindheim both received co-"created by" credit for the pilot episode of "The Equalizer" which aired September 28, 1985.

In order to prove the works' "substantial similarity," plaintiff presented the following evidence during the liability phase of trial: the testimony of expert witness Linda Seger, who asserted that a cumulation of various individual similarities between plaintiff's script and defendants' pilot episode existed, i.e., both have "similar settings[:] ... a high rise apartment, ... an elegant living room, a restaurant, a roof top, a formal party, a police station, truck on the road ... a large city," both characters are described in terms of contradictions such as " 'ruthless,' 'deadly,' 'sympathetic,' 'comforter,' 'sentimentalist,' 'realist,' 'idealist,' and 'cynic,' " both start with "a very strong action scene, then [ ] a relationship scene," and both contain a "killing of a Hispanic man" within the first twenty seconds. R.T. at 601–02, 610, 615.

In order to prove actual copying of his script by the author of defendants' work,

plaintiff produced the following: (1) the testimony of Lindheim that he had read plaintiff's script at NBC (R.T. at 498); (2) the testimony of Peter Andrews, who worked with Lindheim at NBC, which indicated that Lindheim intended to take "The Equalizer" script with him when he left NBC (R.T. at 145, 148); and (3) an argument in closing that since the 1981 Lindheim/Sloan story outline or treatment contained similar ideas to those included in the Shaw 1978 treatment, impermissible copying of plaintiff's script by defendants was established (R.T. at 208).

In rebuttal, defendants (1) offered the deposition testimony of plaintiff, in which he indicated that he had "pretty well developed what would be the lead character, and the supporting characters, and the villains, and the basic plot" in his treatment for later use in the allegedly infringed script (R.T. at 312); (2) elicited an admission from plaintiff on cross-examination that he never showed his script to defendant Sloan and had no knowledge that the script was ever shown to anyone but Lindheim (R.T. at 322); and (3) relied on the testimony of Lindheim that he had never seen plaintiff's treatment, he took no scripts with him when he left NBC, he never stated, as Mr. Andrews testified, that he would not leave NBC with such "gems" as Shaw's "Equalizer" or that he "had plans for 'The Equalizer' " himself upon leaving NBC and he provided only the rough concept of the pilot episode's script to defendant Sloan, who was the sole author of that script (R.T. at 497, 507, 545, 560, 568, 576). Moreover, as to the issue of substantial similarity, defendants proffered the expert testimony of Arnold Margolin to the effect that no "significant or meaningful similarities [ ] existed outside of the genre ... outside of commonplace scenes or scenes a faire. That is, scenes that [ ] follow out of the genre ... scenes that you would necessarily expect to see in the movie, given the subject matter of the movie." (R.T. at 849).

At the close of the evidence, the Court instructed the jury that in order for plaintiff Shaw to prevail, he "must prove: (1) that he is the owner of a federal copyright

in the script that he claims was infringed; (2) that the actual concrete elements of the pilot episode of the television series 'The Equalizer' (that is, its plot, theme, characters, dialogue, mood, setting, pace and sequence of events) are substantially similar to the actual concrete elements in plaintiff's script; (3) that the pilot episode of the television series 'The Equalizer' is substantially similar to the protectible expression in plaintiff's script, that is, that a reasonable lay viewer watching the pilot episode of 'The Equalizer' would find that it had captured the 'total concept and feel' of plaintiff's script, i.e., it was a 'dramatization' or 'picturization' of the protectible expression in plaintiff's script; and (4) that the author or authors of the pilot episode of 'The Equalizer' actually copied substantial original and protectible expression from the plaintiff's script in creating the pilot episode, rather than creating the pilot episode independently of plaintiff's script."

Specifically, the Court instructed that "[i]n order for the plaintiff to prove that his script and [the] TV Pilot are substantially similar with regard to the protectible expression contained in plaintiff's script, a two-part test must be satisfied.... Under [the objective] test, you should focus on the various concrete elements of the two works, that is, the objective manifestations of creativity, which include plot, theme, dialogue, mood, setting, pace, character and sequence of events. Under the 'objective' test, analytic dissection and expert testimony are appropriate. [The subjective] test requires you, as an audience of ordinary, reasonable persons, to make a subjective judgment as to whether the two works are or are not similar. You must determine if the defendants' TV Pilot captured the 'total concept and feel' of plaintiff's script, that is, whether the TV Pilot constitutes a dramatization or picturization of the protectible expression in plaintiff's script."

With regard to the element of copying, the Court instructed that "even where two works are substantially similar under both the objective and subjective tests, no amount of substantial similarity will suffice to prove infringement unless the defendant actually copied protectible expression from plaintiff's script. An inference of copying may arise if plaintiff proves (a) that the author of defendants' episode had access to plaintiff's script, and (b) that plaintiff's script and the defendants' episode contain similarities that in the normal course of events could not be expected to arise independently in the two works."

In the first (liability) phase of trial, the jury returned a verdict in favor of plaintiff on the remaining claim of copyright infringement. On the Special Verdict Form, the jury answered in the affirmative to the following interrogatories: (1) "[d]o you find that the TV Episode of 'The Equalizer' against which the plaintiff alleges copyright infringement ... is substantially similar to the original and protectible expression in Plaintiff's Script, when compared and analyzed *objectively* under the law?"; (2) "[d]o you find that its intended audience would consider that the TV Episode captured the 'total concept and feel' of Plaintiff's Script, that is, whether the TV Episode constitutes a 'dramatization' or 'picturization' of the original and protectible expression in Plaintiff's Script, when compared *subjectively* under the law?"; and (3) "[i]f you find that the TV Episode is substantially similar to the original and protectible expression in Plaintiff's Script, do you find that such substantial similarity resulted from copying of Plaintiff's Script by the author or authors of the TV Episode under the law?"

Defendants brought a motion for judgment as a matter of law thereafter on April 21, 1992, and a motion for new trial on April 22, 1992, both before the second (damages) phase of trial. Plaintiff filed opposition to both motions on April 29, 1992. Defendants filed replies on May 6, 1992. The Court heard oral argument on the motions on May 11, 1992. At the hearing, the Court granted defendants' motion for judgment as a matter of law and conditionally granted their motion for new trial.

The Court now issues this opinion in order to clarify the circumstances under which a trial court may grant judgment as

a matter of law in a copyright infringement action under *Shaw.*

## III.

## THE APPLICABLE STANDARDS

Fed.R.Civ.P. 50(b) states that a motion for judgment as a matter of law made at the close of the evidence may be "renewed by service and filing not later than 10 days after entry of judgment." The Notes to the 1991 Amendment state that "[i]n ruling on such a motion, the court should disregard any jury determination for which there is no legally sufficient evidentiary basis enabling a reasonable jury to make it. The court may then decide such issues as a matter of law and enter judgment if all other material issues have been decided by the jury on the basis of legally sufficient evidence, or by the court as a matter of law."

Fed.R.Civ.P. 59(a) provides for the granting of a motion for new trial "for any of the reasons for which new trials have heretofore been granted in actions at law in the courts of the United States." Section (b) of Rule 59 states that "[a] motion for new trial shall be served not later than 10 days after the entry of judgment." Rule 50(c)(1) indicates that, even where a party's Rule 50 motion is granted, the court should issue its conditional ruling with regard to a companion Rule 59 motion. Local Rule 15.1 sets forth illustrative grounds for a new trial, which include insufficiency of the evidence, errors of law during trial, and accident or surprise which could not have been guarded against by the exercise of ordinary prudence.

## IV.

## THE PARTIES' CONTENTIONS

A. Motion for Judgment as a Matter of Law

Defendants argued that judgment as a matter of law should be entered in their favor because there was insufficient evidence for a reasonable jury applying the appropriate legal principles to have found that the parties' works were substantially similar under the objective test or that defendant Sloan, the author of defendants' TV episode, had access to the protectible expression embodied in plaintiff's script. They urged that juror confusion was inevitable, based on plaintiff counsel's arguments which confused the issues of substantial similarity with copying and indicated that the jurors should compare the parties' two unregistered treatments rather than the relevant script and TV episode.

With regard to their contention that insufficient similarities between the protected expression in the parties' works were evidenced to support the jury's verdict, defendants argued that: (1) under *Feist Publications, Inc. v. Rural Telephone Service Company, Inc.,* 499 U.S. ——, ——, 111 S.Ct. 1282, 1289, 113 L.Ed.2d 358, 371 (1991), copyright protection extends only to those protectible aspects of plaintiff's script which are original to the script, and pursuant to 17 U.S.C. § 103(b), these aspects did not include those which were original to the underlying work from which it was derived, i.e., plaintiff's treatment; and (2) since plaintiff never registered the underlying treatment, a prerequisite to bringing suit for copyright infringement in accordance with 17 U.S.C. § 411(a), he cannot assert a claim or recover for infringement of protectible expression original to that treatment. Finally, they contended that plaintiff's expert Dr. Seger's testimony missed the point of the extrinsic test for substantial similarity, since it (1) focused on the cumulative nature of individual similarities rather than the substantial similarity of protectible expression and (2) suggested that evidence of actual copying of unprotected elements would support a finding of substantial similarity as to elements of protectible expression.

Dr. Seger's testimony was particularly confusing and irrelevant, defendants contended, because: (1) in contravention of *Feist,* —— U.S. at ——, 111 S.Ct. at 1294, 113 L.Ed.2d at 377 and *Berkic v. Crichton,* 761 F.2d 1289, 1293 (9th Cir.1985), she focused on the similarity of discrete concrete elements rather than the similarity of the selection, coordination, arrangement or to-

tal sequence of events created by those elements; (2) she relied on comparisons of unprotected ordinary phrases to show similarity (*See Narell v. Freeman*, 872 F.2d 907, 911 (9th Cir.1989) (cliche phrases not protected)); (3) she relied on plaintiff's word pictures of characters who merely served to move the story along, and therefore were not protectible elements under *Warner Brothers, Inc. v. ABC, Inc.*, 720 F.2d 231, 240 (2d Cir.1983) and *Columbia Pictures Corp. v. NBC, Inc.*, 137 F.Supp. 348, 353 (S.D.Cal.1955); (4) she impermissibly "split characters" in fragmented comparisons of characters in both works in contravention of *Rose v. Connelly*, 38 F.Supp. 54, 55–56 (S.D.N.Y.1941) and *Twentieth Century Fox Film Corp. v. MCA, Inc.*, 715 F.2d 1327, 1330 (9th Cir. 1983); (5) she used a montage of photographs arranged out of sequence to support her conclusions of similarity, a practice which the court in *Litchfield v. Spielberg*, 736 F.2d 1352, 1356 (9th Cir.1984) deemed "inherently suggestive and unreliable;" (6) she failed to limit her testimony to a comparison of protectible expression; and (7) she relied on "impressions" created by reading between the lines of the script or imagining what plaintiff could have created through a rewrite.

In short, defendants argued that (1) plaintiff has very little protectible expression in his script, as most of it flows from the genre and constitutes unprotectible scenes a faire; (2) if any protectible expression exists, it was derived from the treatment and therefore is not original to the script (and cannot be sued upon); and (3) even if the derivative works argument is not accepted, as a matter of law the script does not contain any protectible expression which was infringed by defendants' episode.

Moreover, they contended that plaintiff has produced no evidence that the author of the protectible expression in the TV episode (Sloan) had a reasonable opportunity to access plaintiff's registered script so that he could have actually copied it. *See Meta–Film Associates, Inc. v. MCA, Inc.*, 586 F.Supp. 1346, 1355 (C.D.Cal.1984). At the most, defendants urged, plaintiff

showed that Lindheim had access to plaintiff's script, but the evidence showed that he was not responsible for creating the protectible expression in defendants' script for the TV episode, since his treatment and contributions to Sloan's writing efforts concerned only very general matters and ideas which were not entitled to copyright protection.

Finally, they distinguished the case's posture at this juncture, and ripeness for decision as a matter of law, from its posture at the summary judgment stage by pointing out that: (1) neither this Court on summary judgment nor the Ninth Circuit on review was presented with the derivative work issue, since plaintiff had not filed his amended certificate of copyright registration with regard to his script describing it as a work derivative of his previous treatment until after the motions had been briefed for this Court; (2) the Ninth Circuit's decision expanded the extrinsic test applied by this Court on summary judgment from a comparison of "general ideas" to a comparison of protectible expression in the case of literary works, 919 F.2d at 1357; and (3) the Supreme Court's decision in *Feist*, —— U.S. at ——, ——, 111 S.Ct. at 1287, 1295, 113 L.Ed.2d at 369, 379, makes clear that (a) the "inverse ratio rule" (the more evidence of uncanny similarities, the less evidence of actual physical access is needed to prove copying) and (b) the Ninth Circuit's consideration in *Shaw* of unprotectible similarities relevant only to the issue of copying when applying the extrinsic test for similarity of protectible expression are both no longer permissible in copyright infringement actions involving literary works.

In opposition, plaintiff argued that the Ninth Circuit's decision in *Shaw* is law of the case, and must be followed by this Court. In other words, he contended that this Court cannot find that plaintiff may not prevail on the basis of substantial similarity when the Ninth Circuit has already indicated that a triable issue of fact exists as to it. Plaintiff cited *Fadhl v. City & County of San Francisco*, 804 F.2d 1097, 1099 (9th Cir.1986) and *Vucinich v. Paine*,

*Webber, Jackson & Curtis, Inc.,* 803 F.2d 454 (9th Cir.1986) in support of this proposition.

Moreover, plaintiff urged that this case is no different than when the Ninth Circuit considered it: (1) the law at that time provided that a plaintiff must show a defendant had copied protected elements of a work and that the similarity between their works extended to protectible expression, *Shaw,* 919 F.2d at 1356; (2) *Shaw* did not rely on unprotectible similarities such as titles in applying the extrinsic test, and this Court did not instruct the jury to do so either; (3) whether the extrinsic test applied by the Ninth Circuit in *Shaw* was "new" or not, the Ninth Circuit applied it to the facts presented here and found that a triable issue of fact existed as to substantial similarity; and (4) plaintiff's treatment was unregistered at all relevant times during this proceeding, even at the time this court originally considered defendants' motion for summary judgment, so that defendants' "derivative work" argument was always available to them.

Plaintiff refuted on policy grounds defendants' argument that those elements which first appeared in plaintiff's treatment and reappear in the script do not constitute protectible expression when they are included in plaintiff's script, the work derived from plaintiff's treatment. Plaintiff argued that if the contents of all working outlines are unprotected once incorporated into their final form, copyright protection (at least for literary works, where multiple drafts are the norm) would be emasculated. As a general proposition, plaintiff also stated that defendants cannot now expect to succeed on this motion since the jury made all factual findings after being "correctly" instructed with regard to the law, as requested by the defendants.

Finally, plaintiff contended that pursuant to *Bevan v. Columbia Broadcasting System, Inc.,* 329 F.Supp. 601 (S.D.N.Y.1971), the jury had sufficient evidence to find that Sloan had access to plaintiff's work vicariously through Lindheim, who had heard plaintiff "pitch" his treatment and probably obtained a copy of plaintiff's script.

In reply, defendants contended that two exceptions to the law of the case doctrine apply here because: after the Ninth Circuit's decision in *Shaw,* the Supreme Court decided *Feist,* a decision by a higher, controlling authority which "clarified" the law and therefore renders the law of the case doctrine inapplicable in accordance with *Dean v. Trans World Airlines, Inc.,* 924 F.2d 805, 810 (9th Cir.1991) (noting that the doctrine does not bar reconsideration of an issue where controlling authority has since made a contrary decision of law); and this trial has produced substantially different evidence than that which was presented to the Ninth Circuit upon the appeal of this Court's grant of summary judgment. *See United States v. Robinson,* 690 F.2d 869, 872 (11th Cir.1982). Defendants further noted that plaintiff's own testimony at trial supports their position that the script added little protectible expression to that which was already included in his treatment, and therefore the script's copyright protection was extremely limited to that protectible expression which did not appear first in the underlying work. R.T. at 310, 312, 323–24. Moreover, defendants asserted that the Ninth Circuit's recent decision in *Brown Bag Software v. Symantec Corp.,* 960 F.2d 1465, 1477 (9th Cir.1992) indicates that the circuit has backed away from an extreme interpretation of *Shaw* (that summary judgment or judgment as a matter of law is almost never available in a copyright case) to adopt Nimmer's position: "the decision [in *Shaw* ] is better viewed as standing for the unremarkable proposition that when objectively speaking a triable case of expressive similarity exists, the case must be sent to the trier of fact." Nimmer § 13.03[E][3] at 13–78.20. Finally, defendants added that the Supreme Court's opinion in *Feist* has clarified that the focus of copyright protection in works that incorporate pre-existing or unprotectible elements (not just facts in compilations like the one at issue in *Feist,* but stock characters and scenes a faire in literary works) should be whether the arrangement of individual similarities is sufficiently original, and here plaintiff's expert Dr. Seger has

only illustrated that disparate similarities as to isolated elements exist.

## B. Motion for New Trial

Defendants based their motion for new trial on identified errors of law, misconduct by plaintiff's counsel, insufficiency of the evidence and the existence of accident or surprise which could not have been guarded against through due diligence. Specifically, they urged that: (1) there was insufficient evidence to support the jury's finding of substantial similarity under the objective test; (2) the jury's verdict with regard to the subjective test was against the weight of the evidence, which was probably the result of the jury's confusion over the use of the "total concept and feel" language in the jury instructions, as it intimated that similarity between the two concepts rather than their protectible expression was sufficient to support a finding of substantial similarity; (3) the only evidence of access to plaintiff's script was by Lindheim, a nonwriter of the allegedly infringing TV episode, which is insufficient under *Jason v. Fonda*, 698 F.2d 966, 967 (9th Cir.1982) (a finding of access by an allegedly infringing author must be based on a reasonable possibility of access rather than speculation or conjecture); (4) closing statements made by plaintiff's counsel with regard to "David and Goliath" analogies and plaintiff's as well as his expert witness' inability to work in the entertainment industry again after this trial due to anticipated "industry" retaliation constituted prejudicial misconduct under *Draper v. Airco, Inc.*, 580 F.2d 91, 95 (3d Cir.1978) and *Brownlee v. United Fidelity Insurance Co.*, 117 F.R.D. 383, 386–87 (S.D.Miss. 1987), *aff'd without opinion*, 854 F.2d 1319 (5th Cir.1988); (5) the Court's exclusion of Shaw's "Have Gun Will Travel" scripts impaired Lindheim and Margolin's testimony, since the jurors were not able to note for themselves the extent to which plaintiff "borrowed" from the character therein in creating his "Equalizer;" and (6) plaintiff's failure to comply with Fed.R.Civ.P. 26(e)(2) in responding to interrogatories with regard to his witness Mr. Andrews and knowing concealment of Mr. Andrews' address

once plaintiff revealed he would call Andrews as a witness prejudiced the defense in the preparation of its case (since they could not reach him to depose him and thereby discover the content of his testimony with regard to defendant Lindheim's reputed admissions that he intended to take plaintiff's "gem," i.e., script, with him when he left Universal).

In opposition, plaintiff asserted: (1) that the evidence of plagiarism was overwhelming, so that both the objective and subjective tests for substantial similarity were supported by the evidence; (2) there was evidence that Lindheim acted as Sloan's intermediary in gaining access to plaintiff's script in order to copy it; (3) plaintiff counsel's closing argument was perfectly accurate as to the relative size of the parties (industry giant defendants versus lone plaintiff writer), but at any rate defendants waived any objection to the argument by not objecting to counsel's remarks at the time they were made and by not requesting a curative instruction be made to the jury, citing *Gonzalez v. Volvo of America Corp.*, 752 F.2d 295, 298 (7th Cir.1985); (4) the Court properly excluded the "Have Gun Will Travel" scripts as cumulative and unduly time consuming; and (5) plaintiff's counsel did not act improperly with regard to Andrews, since Andrews' previous declaration did not render any documents previously produced untrue and therefore need not have been disclosed pursuant to Fed. R.Civ.P. 26(e)(2)(B) and the correctness of Andrews' local address was of no moment to the defense's case since they did not even search for Andrews in earnest until after the first phase of trial.

In reply, defendants contended that plaintiff's counsel added to the jury's confusion and ensured a verdict against the weight of the evidence by focusing his expert witness' testimony and his closing argument on the evidence of actual copying rather than on the substantial similarity of the protectible expression in both works. Moreover, they stated that they did not waive any objections to plaintiff's closing argument by choosing to address the issue after closing argument and out of the pres-

ence of the jury. Finally, they stated that the Andrews situation is prejudicial due to plaintiff counsel's acts of concealment, that the defense's failure to search earnestly for Andrews until after the trial is of no moment and therefore plaintiff's "no harm no foul" argument should not be tolerated.

## V.

## ANALYSIS

### A. Motion for Judgment as a Matter of Law

#### 1. *Summary of Elements of Copyright Infringement*

■ To prove copyright infringement, plaintiff must prove that his work and defendants' are substantially similar with regard to their protectible expression under both an objective/extrinsic and subjective/intrinsic test, and that the author of defendants' work had a reasonable opportunity to gain access to plaintiff's work in order to actually copy it. *See Shaw,* 919 F.2d at 1356–57. *See also, Brown Bag,* 960 F.2d at 1475–1476; *Granite Music Corp. v. United Artists Corp.,* 532 F.2d 718, 720 (9th Cir.1976) (evidence of copying). If the similarities between the works are the result of independent creation, rather than of copying, there is no copyright infringement. *Feist,* —— U.S. at ——, 111 S.Ct. at 1287, 113 L.Ed.2d at 369.

■ The extrinsic test for substantial similarity of protectible expression in the allegedly infringed and infringing works is an objective analysis of the similarity of the expression of plot, themes, characters, dialogue, mood, setting, pace and sequence of events in the two works, measured by analytic dissection and expert testimony. *Shaw,* 919 F.2d at 1356–57. The intrinsic test measures substantial similarity of protectible expression based on the response of the ordinary reasonable person as to whether the defendants' work captured the "total concept and feel" of plaintiff's work, in other words, whether the allegedly infringing work constituted a "picturization" or "dramatization" of plaintiff's. *Id.* at 1356, 1358. *See also, Litchfield,* 736 F.2d

at 1356. A presumption of copying of plaintiff's work by defendants arises where plaintiff offers proof that the author of defendants' work had a reasonable opportunity to gain access to plaintiff's work and the two works are substantially similar in their protectible expression; to rebut the presumption, defendants then must produce evidence which offers an alternative reason for the similarity other than copying (i.e., independent creation). *See Granite Music,* 532 F.2d at 720–721. *See also, Meta–Film Associates,* 586 F.Supp. at 1354–55.

#### 2. *No Evidence as to Similarity or Access*

■ Plaintiff has failed to produce evidence that the parties' works are substantially similar under the extrinsic test, whether or not plaintiff's script is a "derivative work" of his earlier script. Plaintiff's analysis of alleged similarities between the works, introduced through the testimony of Dr. Seger, indicates that the similarities are between ideas, concepts and other unprotected elements such as stock scenes and aspects of characters which flow naturally from the particular genre or primarily serve a plot function. *See Olson v. National Broadcasting Co., Inc.,* 855 F.2d 1446, 1452–53 (9th Cir.1988) (the less developed the character, the less copyright protection exists).

■ Moreover, the *script* on which plaintiff sues does not contain protectible expression to the extent it contains elements of protectible expression contained in the *treatment* or underlying work, based on its registered "derivative work" status. *See* 17 U.S.C. § 103(b) ("[t]he copyright in a ... derivative work extends only to the material contributed by the author of such work, as distinguished from the preexisting material employed in the work, and does not imply any exclusive right in the preexisting material.") Contrary to plaintiff's contention that a "work in progress" or draft like plaintiff's treatment cannot be deemed an underlying work and a final product like plaintiff's script a derivative one, 17 U.S.C. § 101 states that "[a] work consisting of

editorial revisions, annotations, elaborations or other modifications which, as a whole, represent an original work of authorship, is a derivative work." Even disregarding the derivative work status of plaintiff's script, however, whatever the treatment contributed to the script either constituted mere uncopyrightable ideas or unprotectible scenes a faire. *See* 17 U.S.C. § 102(b) ("[i]n no case does copyright protection for an original work of authorship extend to any idea ... concept, principle or discovery, regardless of the form in which it is described ...").

Plaintiff has also failed to produce evidence of actual copying by the author of defendants' TV episode, defendant Sloan. The evidence presented at trial indicated that defendant Lindheim had read plaintiff's script, although he had not retained it, and that Lindheim added only broad-based verbal suggestions to Sloan when Sloan was writing the script for defendants. R.T. at 497, 545–546, 560, 568, 576. Plaintiff produced no evidence like that adduced in *Bevan*, 329 F.Supp. at 604, 609–10, to the effect that a particular defendant must have received plaintiff's script based on the defendant's (1) placement in the chain of command in an entertainment company that had considered plaintiff's script and (2) participation in the development of the allegedly infringing program. At most, plaintiff Shaw has shown that Lindheim succeeded in transferring what uncopyrightable ideas and concepts he could recall from plaintiff's script to Sloan's. Aside from the identity of the title, which Lindheim testified plaintiff gave him the right to use, plaintiff produced no evidence of striking similarities that would bespeak copying and preclude the possibility of Sloan's independent creation of his script. *See Id.* at 609. In short, plaintiff did not present sufficient evidence for a reasonable jury to find that Sloan had "a reasonable opportunity to view or read plaintiff's [allegedly infringed] work." *Id.* at 604.

### 3. *Judgment as a Matter of Law at this Juncture*

■ The Ninth Circuit's decision in *Shaw* does not constitute "law of the case" for purposes of this Court's ruling on defendants' motion for judgment as a matter of law, in light of the substantially different evidence presented at trial upon remand. *See United States v. Robinson*, 690 F.2d 869, 872 (11th Cir.1982).[1]

Moreover, judgment as a matter of law at this juncture is consistent with the Ninth Circuit's opinion in *Shaw*, even though the Court determined that in light of the evidence before it at that point this Court's grant of summary judgment in favor of defendants was improper. *Feist*, — U.S. —, — – —, 111 S.Ct. 1282, 1295–96, 113 L.Ed.2d 358, 379–80, made clear that a lack of similarity between original protected expression is fatal to a plaintiff's copyright claim; in other words, substantial similarities between unprotected elements, like those presented by plaintiff's expert witness at trial in this case, cannot be used to find substantial similarities in the protectible expression of two works. The Ninth Circuit also has stated recently in *Brown Bag* that *Shaw* merely asserts that when a triable issue of substantial similarity under the objective test exists, a case must be sent to the trier of fact. 960 F.2d at 1476–1477. This indicates that *Shaw* should not be read so stringently as to preclude judgment as a matter of law under all circumstances, particularly in the case of a post-trial judgment as a matter of law where a plaintiff has had the opportunity to present all his evidence to the trier of fact and it still proves insufficient to support his claim.[2]

### B. Motion for New Trial

■ The Court also finds that a conditional grant of the motion for new trial is

1. The Court finds unpersuasive defendants' alternate rationale for the inapplicability of the law of the case doctrine pursuant to *Dean*, 924 F.2d at 810 (controlling authority has since made a contrary decision of law), since *Feist* did not completely alter the law applied in *Shaw* but merely "clarified" it.

2. The Court notes that the timing of the motion after the first phase of trial and before the second (damages) phase is also appropriate: pursuant to Fed.R.Civ.P. 50, a motion for judgment as a matter of law may be made earlier than but "not later than 10 days after entry of judgment" and judicial efficiency would be promoted by the Court's entering judgment as a

appropriate since the jury had insufficient evidence to support a finding of similarity under the objective test or access to copy on the part of the defendant author Sloan.

## VI.

### CONCLUSION

1. The Court grants defendants' motion for judgment as a matter of law. Plaintiff failed to produce sufficient evidence at trial to support a finding by a reasonable jury that plaintiff's script and defendants' TV episode were substantially similar under the extrinsic test or that defendant Sloan, the author of the protectible expression in defendants' allegedly infringing work, had a reasonable opportunity to gain access to plaintiff's script and actually copy it.

Plaintiff's analysis of alleged similarities between the works, introduced through the testimony of Dr. Seger, showed that any similarities between the two works exist with regard to ideas, concepts and other unprotected elements such as stock scenes and aspects of characters which flow naturally from the particular genre or primarily serve a plot function. Moreover, to the extent plaintiff's script contains elements of protectible expression that first appeared in the underlying work (plaintiff's treatment), the script does not enjoy independent copyright protection and plaintiff cannot recover for infringement of those aspects in this action, in light of the script's registered "derivative work" status.

Plaintiff also failed to produce evidence of actual copying by the author of defendants' TV episode, defendant Sloan. The evidence presented at trial indicated that defendant Lindheim had read plaintiff's script, although he had not retained it, and that Lindheim added only broad-based verbal suggestions to Sloan when Sloan was writing the script for defendants. Aside from the identity of the title, plaintiff also lacked evidence of striking similarities that bespeak copying. Accordingly, the Court

matter of law in favor of defendants now before

grants defendants' motion for judgment as a matter of law.

2. The Court conditionally grants defendants' motion for new trial as well, in light of its grant of defendants' motion for judgment as a matter of law and its finding that the jury's verdict was not sufficiently supported by the evidence. *See* Fed. R.Civ.P. 59; Local Rule 15.1.

IT IS SO ORDERED.

IT IS FURTHER ORDERED that the Clerk shall serve a copy of this Order on counsel for all parties.

the onset of the second phase of trial.