**Seth SWIRSKY, an individual d/b/a Julian's DAD; Warryn Campbell, an individual d/b/a Nyrraw Music, Plaintiffs,**

v.

**Mariah CAREY, an individual; James Harris III, an individual; Flyte Tyme Productions, Inc., an entity of unknown designation; Flyte Tyme Tunes, an entity of unknown designation; ATV Songs, LLC, an entity of unknown designation; RYE Songs, an entity of unknown designation; Columbia Records, an entity of unknown**

designation; **Sony Music Entertainment, an entity of unknown designation; and EMI April Music, Inc., an entity of unknown designation; and Does 1 through 10, inclusive., Defendants.**

**No. CIV.00–09926(EX).**

United States District Court, C.D. California, Western Division.

Aug. 27, 2002.

Jonathan D. Freund, Thomas A. Brackey, II, Nathan Patrick Gable, Freund & Brackey, Beverly Hills, CA, for Plaintiffs.

Robert M. Dudnik, John Michael Genga, Paul Hastings Janofsky & Walker, Los Angeles, CA, Hayes F. Michel, Proskauer Rose, Los Angeles, CA, for Defendants.

## ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

SNYDER, District Judge.

### I. INTRODUCTION

On September 15, 2000, plaintiffs Seth Swirsky and Warryn Campbell (collectively "plaintiffs") filed a complaint for copyright infringement, false designation of origin, reverse passing off, unfair competition and unjust enrichment, on the grounds that defendants' song, "Thank God I Found You" ("Thank God" or "defendants' song") infringes upon plaintiffs' original composition, "One of Those Love Songs" ("One" or "plaintiffs' song"). Defendants are Mariah Carey, the artist who recorded defendants' song, as well as the authors of Thank God and several entities which allegedly profited from its release and distribution. Defendants here seek summary judgment based on the ground that plaintiffs have presented no triable issue of fact demonstrating that Thank God is substantially similar to the protected expression contained in One.[1]

### II. SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate where "there is no genuine issue as to any material fact" and "the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). The moving party has

---

1. The Court held a hearing on the instant motion on February 4, 2002. At the hearing the Court requested additional briefing and subsequently took the matter under submission.

the initial burden of identifying relevant portions of the record that demonstrate the absence of a fact or facts necessary for one or more essential elements of each cause of action upon which the moving party seeks judgment. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

If the moving party has sustained its burden, the nonmoving party must then identify specific facts, drawn from materials on file, that demonstrate that there is a dispute as to material facts on the elements that the moving party has contested. *See* Fed.R.Civ.P. 56(c). The nonmoving party must not simply rely on the pleadings and must do more than make "conclusory allegations [in] an affidavit." *Lujan v. National Wildlife Fed'n,* 497 U.S. 871, 888, 110 S.Ct. 3177, 111 L.Ed.2d 695 (1990). *See also Celotex Corp.,* 477 U.S. at 324, 106 S.Ct. 2548. Summary judgment must be granted for the moving party if the nonmoving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Id.* at 322, 106 S.Ct. 2548. *See also Abromson v. American Pacific Corp.,* 114 F.3d 898, 902 (9th Cir.1997).

In light of the facts presented by the nonmoving party, along with any undisputed facts, the Court must decide whether the moving party is entitled to judgment as a matter of law. *See T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n,* 809 F.2d 626, 631 n. 3 (9th Cir.1987). When deciding a motion for summary judgment, "the inferences to be drawn from the underlying facts ... must be viewed in the light most favorable to the party opposing the motion." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587,

106 S.Ct. 1348, 89 L.Ed.2d 538 (1986) (citation omitted); *Valley Nat'l Bank of Ariz. v. A.E. Rouse & Co.,* 121 F.3d 1332, 1335 (9th Cir.1997). Summary judgment for the moving party is proper when a rational trier of fact would not be able to find for the nonmoving party on the claims at issue. *See Matsushita,* 475 U.S. at 587, 106 S.Ct. 1348.

## III. DISCUSSION

■■ In order to establish copyright infringement, a plaintiff must prove that (1) he owns the copyright in the work which has allegedly been infringed, and (2) that the defendant copied protected elements of the plaintiff's work.[2] *Three Boys Music Corporation v. Bolton,* 212 F.3d 477, 481 (9th Cir.2000). "Because direct evidence of copying is not available in most circumstances, plaintiff may demonstrate copying by showing that defendant had access to plaintiff's work and that the two works are 'substantially similar' in idea and in expression of the idea." *Smith v. Jackson,* 84 F.3d 1213, 1218 (9th Cir.1996).

■ The Ninth Circuit employs a two-part test to determine whether two works are substantially similar. *Id.* The "extrinsic" test compares two works in terms of external, objective criteria to determine whether their ideas and expression are similar. *Id.* Both analytic dissection and expert testimony may be considered in the application of the extrinsic test. *Id.* If the works are found to be substantially similar under the extrinsic test, then the "intrinsic test"—whether an "ordinary, reasonable observer" would find a substantial similarity of expression in the two works—is applied. *Id.* On motions for summary judgment, as is the case here, only the extrinsic test is relevant because the subjective inquiry that is to be employed under the

---

**2.** For the purposes of this motion, defendants do not dispute that plaintiffs own a valid

copyright in One.

intrinsic test must be left to the trier of fact. *Id.*

### A. Access

■ The Ninth Circuit has described the relationship between degree of access and the standard of proof necessary to show substantial similarity as an "inverse ratio": in other words, the greater defendants' access to a copyrighted work, the less plaintiff has to show in order to establish substantial similarity. *See Shaw v. Lindheim,* 919 F.2d 1353, 1355 (9th Cir. 1990) (describing the "inverse ratio rule"); *Sid & Marty Krofft Television Products, Inc. v. McDonald's Corp.;* (holding that a high degree of access justifies a lower standard of proof to show substantial similarity).

Plaintiffs allege that the musical group "Xscape" recorded a version of One pursuant to a license from plaintiffs' music publisher, April Music. FAC ¶ 25. The Xscape version of One appeared on their album "Traces of My Lipstick," released May 26, 1998 *Id.* ¶ 26. Sometime in 1999, Carey released an album entitled "Rainbow," which contains defendants' allegedly infringing song, Thank God. *Id.* ¶ 29. Plaintiffs allege, *inter alia,* that: (1) both the Xscape version of One and defendants' Thank God were mastered by Bob Ludwig at Gateway Mastering; (2) Both the Xscape album and the Carey album were produced by Sony and distributed by Columbia; (3) April Music appears to have an commercial interest in both the Xscape album and the subsequently released Carey album; and (4) Jermaine Dupri acted as the Executive Producer and Producer on the Xscape album and Xscape's version of One, and as Producer and Co–Producer of numerous singles from the Carey album. *Id.* ¶¶ 30–36. For the purposes of this motion, defendants do not contest these allegations or that "the composers of [defendants' song] had what the law considers a 'high degree of access' to [plaintiffs' song] before they composed [defendants' song]." Defendants' Motion for Summary Judgment ("Mot.") at 3. Because defendants are assumed to have had a high degree of access to plaintiffs' song, plaintiffs' burden of proof to show substantial similarity is lessened.

### B. Substantial Similarity

1. Expert Testimony on Substantial Similarity

Plaintiffs' claim of copyright infringement relies on the testimony of their expert witness, Dr. Robert Walser ("Walser").[3] Dr. Walser compares Xscape's recording of One and defendants' recording of Thank God as it appears on the "Rainbow" album. Walser states that "[i]n this case, a charge of copyright infringement would have to be founded on the resemblance of the songs' choruses, since their lyrics and verse melodies differ clearly and significantly." Walser Report at 1. However, Dr. Walser notes that the chorus is usually the most important part of a popular song. *Id.* Dr. Walser states that the global similarity between the two songs' choruses can be found in "the basic shape and pitch emphasis of the melodies, plus their appearance over highly similar basslines and chord changes, at very nearly the same tempo and in the same generic style." *Id.*[4] Dr. Walser also notes that the two

---

**3.** Dr. Walser states that he is a professional musicologist who specializes in American popular music. February 2, 2000 Expert Report of Robert Walser ("Walser Report"). Opp'n, Ex. A. He is employed as a professor and chair of the Musicology Department at UCLA. *Id.*

**4.** Dr. Walser states that extensive vocal ornamentation of the basic notes of the melody is typical of the contemporary R & B genre in which both songs are performed, and that therefore precise comparison of the notes as

songs are performed in the same key, B-flat major. *Id.*

Dr. Walser further describes the melodic similarities between the choruses of the two songs on a measure by measure basis. Of the first measure, Dr. Walser observes that both plaintiffs' song and defendants' song "begin[ ] on the third degree of the opening chord, B-flat, shift[ ] up to E-flat as that chord is suspended on the third beat of the measure, and return[ ] to scale degree three on the last beat of the bar." *Id.* at 2.[5] Dr. Walser states that certain minor differences in the rhythmic emphasis of the first measure of the two songs are due to "text-setting choices." *Id.* For example, Xscape sings two syllables in the first beat of One, while Carey sings one syllable in the corresponding beat of Thank God. *Id.* Nevertheless, according to Dr. Walser, "the impression is still that of two beats of D, a beat of E-flat, and a return to D at the end of the measure." *Id.* According to Dr. Walser, the second measure of the two songs "emphasizes the second scale degree, C, over an A in the bass, resolving to the third scale degree, D, over a D in the bass in the last half of the measure." *Id.* Dr. Walser notes that the D in the second measure "occurs a beat earlier in [defendants' song] than in [plaintiffs' song], but the melodic direction and point of arrival are the same." *Id.* The third measure of both songs contains not only a "common emphasis on B-flat, but also the ascending pattern F, B-flat, C" which for Dr. Walser constitutes a "structural correspondence" between the two songs in spite of the fact that the

pattern occurs one-half beat later in defendants' song than in plaintiffs' song. *Id.* Dr. Walser states that the fourth measures of the two songs "are dramatically different." *Id.* The fifth, sixth, and seventh measures of both songs, according to the Dr. Walser Report, "repeat measures one through three almost exactly." *Id.* The eighth and final measures "are once again similar, with the descent to four and five in the bass, with one and three emphasized in the melody." *Id.*[6]

### 2. Infringement Analysis

In his report, Dr. Walser identifies the allegedly infringing portion of defendants' song as the chorus,[7] stating that the two songs' choruses are substantially similar because they have similar melodies over similar basslines and chord changes, and because they are recorded in substantially the same genre, tempo, and key. Dr. Walser suggests that the melody of the songs' choruses must be compared as a whole, but adds that a measure by measure comparison also demonstrates the high degree of similarity between the two songs.

Defendants argue that Dr. Walser's opinion fails to create a triable issue of fact on the issue of substantial similarity. First, defendants argue that the melodic similarities asserted in the Walser Report are overstated, and to a large degree contradicted by Dr. Walser's subsequent deposition testimony. In this regard, defendants argue that Dr. Walser has improperly relied upon a subjective process of melodic "reduction" in analyzing the passages at issue and has

sung may obscure "the extent to which the songs are actually heard as similar." *Id.*

**5.** Dr. Walser uses the terms "measure" and "bar" interchangeably.

**6.** Dr. Walser sometimes refers to musical pitches by their letter designations—B flat, C, D, E flat, F, G, and A for the B flat major

scale of the song's here. At other times he refers to them by their scale degree, or pitch number, so that 1 equals B flat, 2 equals C, etc.

**7.** The Court's reference to plaintiffs' and defendants' "songs" in the following analysis should be understood as a reference to those songs' choruses.

completely ignored the differences in pitch and rhythmic emphasis between the two songs. Second, defendants argue that plaintiffs cannot claim copyright protection for the melody of the first and fifth measures of One (which coincidentally are the measures which Dr. Walser finds to be most similar to the corresponding measures of Thank God) because the melody of those measures is a stock musical phrase not original to plaintiffs. Finally, defendants argue that many of the non-melodic similarities which Dr. Walser notes, such as the songs' tempo, genre and key, are also commonplace and not subject to protection, especially where, as here, the melodies of the songs in question are not similar. The Court will consider these arguments below.

### a. Evidence of Melodic Similarity

■■ "Melody is the most memorable part of a composition, the tune that the listener later hums or whistles to himself. Because melody is so salient, it is the most common focus of musical copyright infringement cases." 2 Paul Goldstein, *Copyright* ¶ 8.39 (2d ed. Supp.2002). Defendants argue that Dr. Walser's determination that the melodies of defendants' and plaintiffs' songs are substantially similar is demonstrably and indisputably incorrect as a matter of law, due in part to Dr. Walser's reliance on improper analytical methodology. According to defendants, Dr. Walser's analysis is improper in the con-

text of the extrinsic test for copyright infringement because Dr. Walser relies on a subjective process of "selective reduction" when comparing the choruses. By "selective reduction," defendants mean that Dr. Walser has selected for comparison only those notes which in his opinion are stressed or important in the songs. As an example, defendants point to Dr. Walser's description of the eighth measure of both songs: "[t]he songs' eighth measures ... are once again similar, with the descent to four and five in the bass, with one and three emphasized in the melody." Walser Report at 2. Dr. Walser's own transcription of the melodies of the eighth measures of the two songs shows their actual pitch sequence[8] to be 5–6–1–3–2 (plaintiffs' song) and 6–7–1–2–3–2–1–3 (defendants' song). According to defendants, this shows that the melodies of both songs' eighth measures include many other notes besides one and three, and demonstrates that the two passages are quite different.[9] Defendants also offer their own expert's transcriptions of the basslines of the eighth measure of each song. *See* Ricigliano Transcriptions attached to the Corrections to the Supplemental Declaration of Robert M. Dudnik. Defendants' expert's transcriptions show the basslines of both songs to have many more notes than are shown in the "Baseline Reductions" prepared by Dr. Walser and upon which he bases his analysis. Walser Report, Ex. 5.[10] For example, where Dr. Walser states in his report that the eighth measures of the two songs are similar because they

---

**8.** A 'pitch sequence' shows where a series of notes would fall on a scale, without regard to their time values.

**9.** Plaintiffs object to defendants' use of Dr. Walser's transcriptions, arguing that they may not be accurate. However, given that Dr. Walser's transcriptions form a key part of plaintiffs' case for substantial similarity, the Court believes that defendants are justified in referring to them.

**10.** Plaintiffs object to defendants' expert's transcriptions on the grounds that they are inaccurate and not properly authenticated. However, plaintiffs' principal objection to the bassline transcriptions appears to be that defendants' transcription "included what [Dr. Walser] consider[ed] ornamental notes as though they were structural." *See* Declaration of Robert M. Dudnik, Ex. A, Walser Depo. 245:15–20. In addition, at one point in his deposition, Dr. Walser states that Ricigliano's transcriptions are "accurate." *Id.* at 154:18. As discussed below, the Court finds

share a "descent to four and five in the bass," defendants' expert's transcription shows a pitch sequence in the bass of 2–2–2–5 (plaintiffs song) and 4–5–2–5–5–2–5–5 (defendants' song).[11] Again, according to defendants, this demonstrates the dissimilarity between plaintiffs' and defendants' songs.

Defendants argue that the Walser Report's reliance on the similarity of particular notes in the melodies of the two songs, when Dr. Walser's transcriptions of the two songs demonstrate the presence of many other notes, is not appropriate under the extrinsic test, which seeks to compare two works according to objective criteria rather than subjective perceptions. Dr. Walser's analysis appears to select particular notes to focus on based on his determination that certain notes are "structural," rather than "ornamental," and his opinion that precise comparison of the melody notes as sung may obscure "the extent to which the songs are actually heard as similar." According to defendants, this kind of selective analysis is inappropriate under the extrinsic test, regardless of whether the Walser Report accurately reflects how "important" the notes are, or how the song "actually sounds." Defendants rely on *ZZ Top v. Chrysler Corporation*, 54 F.Supp.2d

983, 986 (W.D.Wash.1999), in which a court considered expert testimony by Dr. Walser concerning the alleged similarity of two guitar "riffs." The court rejected Dr. Walser's analysis, in part because he transcribed chords in the riffs as single notes. Although Dr. Walser maintained that the single notes were "an appropriate representation of 'how the music actually sounds' or is 'perceived,'" the court found that the transcriptions were "not an accurate representation of the written notes that are subject to copyright protection." *Id.* at 986. The court concluded that "defendant has used seemingly objective criteria—musical notes—to represent what is fundamentally Walser's subjective perception of ZZ Top's expression of the riff." *Id.* Here, the Walser Report appears to analyze only a subset of the notes actually present in the two songs as they appear in Dr. Walser's transcriptions. The Court finds that Dr. Walser does not adequately explain, based on objective criteria, why that subset of notes is more important, or more appropriately analyzed, than the other notes present in the songs.[12] For that reason, the Court finds that his expert testimony fails to raise a material issue of fact to suggest that the two songs are substantially similar.[13]

that it was appropriate for defendants' expert to have transcribed all the bass notes of the piece, whether ornamental or not.

**11.** Dr. Walser's statement in the report that plaintiff's song features a four and five in the bass appears to be contradicted by his own "Bassline Reduction," which shows a two and five in the bass.

**12.** Dr. Walser offers no explanation or analysis showing why, based on objective criteria, the dissimilar notes in the two songs should be disregarded.

**13.** The mere fact that plaintiffs have presented expert testimony that One and Thank God are similar does not preclude this Court from determining that they are not similar as a

matter of law under the extrinsic test. In *Narell v. Freeman*, 872 F.2d 907, 912–13 (9th Cir.1989), the Ninth Circuit upheld a trial court's grant of summary judgment in favor of defendant in the face of testimony by plaintiff's expert where "the basic elements of the two works have slight resemblance to one another" and "[n]o reasonable juror could conclude that the extrinsic test is satisfied." Similarly, in *Olson v. National Broadcasting Company*, 855 F.2d 1446, 1448 (9th Cir.1988), the Ninth Circuit upheld a trial court's grant of j.n.o.v. in a copyright infringement case based on a finding of no substantial similarity under either the extrinsic or intrinsic test. The Ninth Circuit found that the trial court's decision to discount the testimony of plaintiff's expert was correct, given the court's finding that the expert's "testimony and mon-

Finally, defendants argue that to the extent Dr. Walser successfully establishes that there is a similarity in pitch sequences between the two songs, he overstates the similarity of the songs' melodies by failing to consider that the songs' rhythmic patterns are quite distinct. Dr. Walser testified that the structure of a melody is based not only on pitch sequences, but also on the rhythmic pattern in which those sequences are arranged. *See* Walser Depo. 64:2–5 ("Q: Now, turning to rhythm, it's correct, isn't it, that melody requires rhythm as well as a series of pitches? A: Yes."). Again, taking the eighth measure as an example, defendants argue that because Dr. Walser conceded at his deposition that the eighth measures of plaintiffs' song and defendants' song have "very different rhythmic patterns," *Id.* at 96:2–4, there can be no substantial similarity between them, especially since their pitch sequences are not particularly similar.

The Court finds these arguments to be persuasive. Based on the above discussion, the Court finds that an objective analysis of the eighth measures of the two songs at issue shows that they are not substantially similar in terms of melody, bassline, rhythmic emphasis, or any combination thereof. The Court also finds, for similar reasons, that the second and third measures of the songs at issue are also not substantially similar under the objective test. In regard to the similarity of the second measure, Dr. Walser found that the melody of each of the two song's second measures "emphasizes the second scale degree, C ... resolving to the third scale degree, D, ... in the last half of the measure." However, Dr. Walser's transcriptions show the actual pitch sequence to be 2–2–2–2–2–2–1–2–1–3 (plaintiffs' song) and 2–2–4–3–2–3 (defendants' song). In addition, Dr. Walser admitted in his deposition testimony that the rhythmic pattern of the two songs' second measures was "very different" and "not substantially similar." Walser Depo. 84:3–25. In regard to similarity of the third measure, Dr. Walser found that both songs' third measures shared a "common emphasis on B-flat [scale degree 1], but also the ascending pattern F[5], B-flat [1], C[2]." However, Dr. Walser's transcription shows the actual pitch sequence to be 1–1–5–6–1–2–1 (plaintiffs' song) and 1–2–7–5–1–2–7–5 (defendants' song). Plaintiffs' song clearly emphasizes B-flat (or 1) to a much greater degree than defendants' song, and defendants' song has several occurrences of the note A (or 7), while plaintiffs' song has none. One of the A notes occurs in the middle of the alleged 5–1–2 "ascending pattern" of defendants' song, diminishing that pattern's similarity across the two songs. Also, Dr. Walser stated in his deposition that the rhythm patterns of the third measures of plaintiffs' and defendants' songs are "very different." Walser Depo. 90:10–14.

The Court also finds, based on statements in the Walser Report, that the fourth, sixth and seventh measures of plaintiffs' and defendants' songs are not substantially similar. The Walser Report states that the fourth measures of the two songs "are dramatically different."[14] The

---

tage were entitled to little weight, given that he deemphasized any dissimilarities between plaintiff's and defendant's works and that his montage in effect compared unprotectable scenes a faire—that is, stock scenes." *Id.* at 1450. *See also Shaw v. Lindheim,* 809 F.Supp. 1393, 1402 (C.D.Cal.1992) (granting judgment as a matter of law based on a determination that the parties' works were not substantially similar under the extrinsic test where plaintiff's expert's analysis of the alleged similarities between the works "indicates that the similarities are between ideas, concepts, and other unprotected elements such as stock scenes and aspects of characters which flow naturally from the particular genre or primarily serve a plot function.")

**14.** In their opposition, plaintiffs contend that the fourth measures are in fact similar, but

fifth, sixth, and seventh measures of both songs, according to the Walser Report, "repeat measures one through three almost exactly." Dr. Walser reaffirmed this statement in his deposition. Walser Depo. 29:6–13. Therefore, the above discussion of the lack of substantial similarity between the second measures and third measures of the two songs applies equally to the songs' sixth and seventh measures.[15]

### b. Similarity of the First (and Fifth) Measures

■ The first measure of the parties' songs, and the fifth measure which essentially repeats it, present a different analysis.[16] Defendants concede, for the purposes of this motion, that the first measure of One and the first measure of Thank God are substantially similar. Defendants nonetheless argue that the similarity of the two songs in terms of their first measures is irrelevant, or of minor importance, because the melody of the first measure of both songs constitutes a stock musical phrase, found in many other songs, and

therefore plaintiffs do not have a protectible copyright interest in it. Under the "scenes a faire" doctrine, "a second author does not infringe even if he reproduces verbatim the first author's expression" when that first author's expression consists of a stock, stereotypical or commonplace phrase. *Landsberg v. Scrabble Crossword Game Players, Inc.*, 736 F.2d 485 (9th Cir.1984), *cert. denied*, 469 U.S. 1037, 105 S.Ct. 513, 83 L.Ed.2d 403 (1984).

Here, defendants argue that Dr. Walser has conceded that the melody of the first measure of One is a commonplace phrase not subject to copyright protection. Dr. Walser states in his deposition testimony that he has seen other works with the same sequence of pitches present in the first measure of both One and Thank God, with a three on the first beat, a three on the second beat, a four on the third beat, and a three on the fourth beat, and that the sequence is "not unusual." Walser Depo. 152:20–153:6. Defendants also argue that the first measure of plaintiff's song must be considered a nonprotectible

---

offer no evidence or analysis to support their claim.

**15.** In conjunction with their opposition, plaintiffs submit a declaration by Dr. Walser asserting that "a true musicological analysis of these choruses ... would require analysis of each of the eight measures separately along with analysis of all eight measures of the chorus as a whole. I never meant to imply, and I categorically reject the proposition, that an analysis of measures 1, 2, and 3, can serve as a substitute for an analysis of measures 5, 6, and 7." Walser Decl. ¶ 6. However, this declaration does not create a material issue of fact regarding the measures at issue. First of all, Dr. Walser's statement in his declaration that *the musicological analysis of measures 1, 2, and 3 would differ from that of measures 5, 6, and 7* appears to contradict his earlier statements that measures 1, 2 and 3 almost exactly repeat measures 5, 6 and 7. To the extent Dr. Walser's declaration contradicts *his prior deposition testimony, it may be disregarded* for purposes of deciding this mo-

tion. *See Foster v. Arcata Assoc.*, 772 F.2d 1453, 1462 (9th Cir.1985) (the general rule in the Ninth Circuit is that a party cannot create an issue of fact by affidavit contradicting prior deposition testimony); *Radobenko v. Automated Equipment Corp.*, 520 F.2d 540, 543–44 (9th Cir.1975) (same); *but see Kennedy v. Allied Mut. Ins. Co.* 952 F.2d 262, 266–67 (9th Cir.1991) (*Radobenko* does not automatically dispose of every case in which a contradictory affidavit is introduced to explain portions of earlier deposition testimony; courts must consider whether the contradiction is a sham to survive summary judgment). More importantly, plaintiffs have not offered any new analysis of how measures 5–7 of each song differ from measures 1–3, or how measures 5–7 the two songs are similar, other than the ways in which measures 1–3 of the two songs are similar.

**16.** Because the analysis of the first and fifth measures is the same, the Court will discuss the first measure only.

stock melodic phrase because it has virtually the same pitch sequence as the opening notes of the well-known song *For He's A Jolly Good Fellow.* Plaintiffs, while pointing out many other differences between their song and *For He's A Jolly Good Fellow,* appear to concede that the melody of the first measure of their song and the beginning of *For He's A Jolly Good Fellow* are very similar, or at least as similar as their song is to defendants' song. *See* Walser Depo. at 230:21–23 ("I'd have to say [that the melody of] "For He's A Jolly Good Fellow" is closer to "One Of Those Love Songs" than "Thank God I Found You" is in that first measure...."). Based on the fact that the melody of the first measure of plaintiffs' song appears to be as similar to other songs, including *For He's A Jolly Good Fellow,* as it is to the first measure of defendants' song, the Court concludes that it should not give great weight to the similarities between the first measures of plaintiffs' and defendants' songs.

In sum, the Court finds that due to the lack of objective similarity of six of the eight measures of each of the songs, and due to the fact that the remaining two measures are not particularly unique, there is no genuine issue of material fact as to the substantial objective similarity of the melodies of the two songs' choruses considered in their entirety. This is true even though plaintiffs' standard of proof is relatively modest because defendants have conceded a high degree of access for the purposes of this motion.

### c. Non–Melodic Similarities

Plaintiffs also argue that they have demonstrated a material question of fact as to substantial similarity because Dr. Walser finds that One and Thank God are performed in the same key, have a similar harmonic structure and tempo, and are both examples of the same genre of music. Defendants argue that in order to show copyright infringement, plaintiffs must demonstrate that defendants copied protectible elements of plaintiffs' copyrighted work. *See Three Boys,* 212 F.3d at 481. Defendants argue that key, harmony, tempo and genre are not independently protectible under copyright but rather that similarities in key, harmony, tempo and genre are typically used to bolster arguments for substantial similarity that derive primarily from melodic similarity. Defendants also argue that even assuming *arguendo* that key, harmony, tempo or genre are independently protectible in cases where they are so unusual as to be unique, they are not protectible here because One and Thank God are garden variety popular songs whose key, harmony, tempo and genre are shared with numerous other contemporary popular songs. Plaintiffs have not submitted, and the Court has not discovered, any case where substantial similarity under the extrinsic test was founded solely on similarities in key, harmony, tempo or genre, either alone or in combination. By contrast, many courts have held that such elements are not protectible. *See Tisi v. Patrick,* 97 F.Supp.2d 539, 548 (S.D.N.Y.2000) (granting summary judgment to defendant because plaintiff could not show similarity "based solely on basic, nonprotectible musical elements" including, among others, "the key of A major, tempo ..., [and] a chord structure/harmonic progression common to much rock music...."); *McRae v. Smith,* 968 F.Supp. 559, 566–67 (D.Colo.1997) (rejecting plaintiff's experts' claim of striking similarity because most of the elements the experts relied on—such as the songs' rhythm, chord progression, and melodic line—were common musical elements which were not copyrightable); *Intersong–USA v. CBS, Inc.,* 757 F.Supp. 274, 282 (S.D.N.Y.1991) (songs' structure, patterns, harmonic progression and recurring eighth note rhythm were common musical ele-

ments which were not copyrightable). Furthermore, plaintiffs have submitted no evidence that suggests that the key, harmonic structure, tempo or genre of One are not commonplace in popular music, and therefore not subject to copyright protection in the first instance. Therefore, the Court finds that given the lack of melodic similarity between the two songs, any alleged similarity in key, harmonic structure, tempo or genre between One and Thank God is not sufficient to create a material question of fact under the extrinsic test.

## IV. CONCLUSION

For the reasons discussed above, defendants' motion for summary judgment is GRANTED.

IT IS SO ORDERED.