**Paula Kandace TOLIVER, Plaintiff,**

v.

**SONY MUSIC ENTERTAINMENT INC., Defendant.**

No. A01–0033 CV (JKS).

United States District Court, D. Alaska.

May 18, 2001.

Jody P. Brion, Anchorage, AK, for Plaintiff.

James N. Reeves, Dorsey & Whitney, Anchorage, AK, for Defendant.

*ORDER*

SINGLETON, District Judge.

## INTRODUCTION

This case asks the Court to circumnavigate the realm of song, expression and idea in order to locate the original insight for a song now enjoying popular success, "Independent Women (Part I)," recorded by the pop trio Destiny's Child. Plaintiff Paula Toliver contends that her own work contributed substantially to the creation of the song and that Defendant Sony Music Entertainment, Inc., has violated copyright laws against unauthorized use and unauthorized derivative use. *See* Docket No. 1. Defendant, who distributes Destiny's Child's hit, claims that the song is wholly its own, and has filed the motion for summary judgment herein at issue. *See* Docket Nos. 10 (Mot.); 14 (Opp'n); 16 (Reply).

## FACTUAL AND PROCEDURAL BACKGROUND

According to the complaint, Plaintiff copyrighted a song entitled "Independent Lady" with the Library of Congress Copyright Office of the United States on March 16, 1999. *See* Docket No. 1 at 3–4; *id.*, Ex. 1 at 3.[1] Prior to that time, the song had also been published in an anthology of songs, as well as in the American Song Reference Library for National and International Research. *See* Docket No. 1 at 3. The song is of the easy listening variety, and has lyrics that read:

> I've just been wondering
> If you're wrong, Your decisions
> are so strong when it comes to
> Holding me
> After all that we've been
> through there's just one thing

---

1. Defendant correctly asserts that while the lyrics to four of Plaintiff's songs were indeed issued copyright registration on that date, the only audio recording registered with the Office is that of another of Plaintiff's songs. *See* Docket No. 10, Reeves Aff. at 2; *id.*, Ex. A.

left to do to retain my dignity
And to make you see.
I'm just [an] Independent Lady.
Not for sure that I need your
Love. For your love is not enough
to control my destiny Oh! . . . But
What am I to do when I can't depend
On you to fulfill my every need.
I've got to be
An Independent Lady.
I'm taking back my pride, And I know
I will survive.
I've got confidence in me
Ms. Self Reliant is my name
Being alone won't bring me pain.
If that's the way it's got to be
CAN'T YOU SEE? ? I'm just an
Independent Lady . . .

*See id.*, Ex. 2.

Plaintiff states that in February of 1999 she mailed copies of her song to "over thirty music studios and recording artists . . . including Sony." *See* Docket No. 14 at 4. "One of the studios that Plaintiff submitted the tapes to was Les Productions Feeling, Inc. Plaintiff received a letter from Les Productions Feeling, Inc. dated March 5, 1999, which indicated that it was forwarding the demos on to Sony." *Id.* at 4–5. Neither party has provided the Court any indication that either Les Productions or Defendant had further communication with Plaintiff with regard to her song. Both parties agree, however, that Defendant had access to it. *See* Docket No. 10 at 7.

Last year, Defendant released the soundtrack album to the film *Charlie's Angels,* which includes "Independent Women (Part I)," written specifically for the album. *See id.* at 3. Composed in hip-hop style, the song reads

Lucy Liu . . . with my girl, Drew . . . Cameron D. and Destiny

Charlie's Angels, Come on
Uh uh uh
Question: Tell me what you think about me
I buy my own diamonds and I buy my own rings
Only ring your cell-y when I'm feelin lonely
When it's all over please get up and leave
Question: Tell me how you feel about this
Try to control me boy you get dismissed
Pay my own fun, oh and I pay my own bills
Always $^{50}\!/_{50}$ in relationships
The shoes on my feet
I've bought it
The clothes I'm wearing
I've bought it
The rock I'm rockin'
'Cause I depend on me
If I wanted the watch you're wearin'
I'll buy it
The house I live in
I've bought it
The car I'm driving
I've bought it
I depend on me
(I depend on me)
All the women who are independent
Throw your hands up at me
All the honeys who makin' money
Throw your hands up at me
All the mommas who profit dollas
Throw your hands up at me
All the ladies who truly feel me
Throw your hands up at me
Girl I didn't know you could get down like that

Charlie, how your Angels get down like that

Girl I didn't know you could get down like that

Charlie, how your Angels get down like that

Tell me how you feel about this

Who would I want if I would wanna live

I worked hard and sacrificed to get what I get

Ladies, it ain't easy bein' independent

Question: How'd you like this knowledge that I brought

Braggin' on that cash that he gave you is to front

If you're gonna brag make sure it's your money you flaunt

Depend on [no one] else to give you what you want

The shoes on my feet

I've bought it

The clothes I'm wearing

I've bought it

The rock I'm rockin'

'Cause I depend on me

If I wanted the watch you're wearin'

I'll buy it

The house I live in

I've bought it

The car I'm driving

I've bought it

I depend on me

(I depend on me)

All the women who are independent

Throw your hands up at me

All the honeys who makin' money

Throw your hands up at me

All the mommas who profit dollas

Throw your hands up at me

All the ladies who truly feel me

Throw your hands up at me

Girl I didn't know you could get down like that

Charlie, how your Angels get down like that

Girl I didn't know you could get down like that

Charlie, how your Angels get down like that

Destiny's Child

Wassup?

You in the house?

Sure 'nuff

We'll break these people off Angel style

Child of Destiny

Independent beauty

[No one] else can scare me

Charlie's Angels

Woah

All the women who are independent

Throw your hands up at me

All the honeys who makin' money

Throw your hands up at me

All the mommas who profit dollas

Throw your hands up at me

All the ladies who truly feel me

Throw your hands up at me

Girl I didn't know you could get down like that

Charlie, how your Angels get down like that

(repeat until fade)

*See* Docket No. 1, Ex. 3 at 1–2. Plaintiff complains that prior to the release of "Independent Women (Part I)," Defendant, "its agents, its servants and its employees had access to Plaintiff's copyrighted work." *See* Docket No. 14 at 5. On January 29, 2001, she thus filed this action alleging violations of Title 17 of the United States Code and seeking injunctive relief. *See* Docket No. 1. Following the filing of its answer, *see* Docket No. 6, Defendant moved for summary judgment. *See* Dock-

et Nos. 10 (Mot.); 14 (Opp'n); 16 (Reply). Plaintiff has requested oral argument on the motion. *See* Docket No. 13.[2] On April 17, 2001, Plaintiff filed a motion for attorney fees. *See* Docket No. 14.

## DISCUSSION

### A. Summary Judgment Standard

Pursuant to Rule 56 of the Federal Rules of Civil Procedure, "[a] party seeking to recover upon a claim, counterclaim, or cross-claim or to obtain a declaratory judgment may ... move with or without supporting affidavits for a summary judgment in the party's favor upon all or any part thereof." *See* Fed.R.Civ.P. 56(a). Summary judgment is appropriate if the Court finds that "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits ... show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *See* Fed.R.Civ.P. 56(c). Courts will construe all evidence and draw all evidentiary inferences in favor of the non-moving party. *See* 10A Charles Alan Wright, Arthur R. Miller and Mary Kay Kane, *Federal Practice & Procedure* § 2727, 459 & nn.4, 5 (3d ed.1998) (citing *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970)). A dispute over a material fact exists if the evidence would allow a reasonable factfinder to return a verdict for the non-moving party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). "[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that

there be no genuine issue of material fact." *Id.* at 247–48, 106 S.Ct. 2505. The non-moving party may defeat the summary judgment motion by producing sufficient specific facts to establish that there is a genuine issue of material fact for trial, *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986), but mere allegations of factual dispute, without more, will not defeat an otherwise proper motion, *see Provenz v. Miller*, 102 F.3d 1478, 1489–90 (9th Cir.1996); *Angel v. Seattle–First Nat'l Bank*, 653 F.2d 1293, 1299 (9th Cir.1981) ("A motion for summary judgment cannot be defeated by mere conclusory allegations unsupported by factual data.").

■ Plaintiff is correct in her assertion that summary judgment is not to be readily granted in cases of copyright infringement. *See* Docket No. 14 at 7–8. The Ninth Circuit Court of Appeals has acknowledged that

> [o]ur circuit has expressed a certain disfavor for summary judgment on questions of substantial similarity, but it is nevertheless appropriate to grant summary judgment if, considering the evidence and drawing all inferences from it in the light most favorable to the non-moving party, no reasonable jury could find that the works are substantially similar in idea and expression.

*See Pasillas v. McDonald's Corp.*, 927 F.2d 440, 442 (9th Cir.1991); *see also Twentieth Century–Fox Film Corp. v. MCA, Inc.*, 715 F.2d 1327, 1329 (9th Cir. 1983) (holding that party moving for summary judgment "may prevail only if no genuine issue of material fact exists on the questions of substantial similarity of idea

---

**2.** The Court has considered this request. After a review of the record, it appears that the parties have sufficiently briefed the issues to the extent that oral argument will not be

helpful. *See* D. Ak. LR 7.1(i); *United States v. Cheely*, 814 F.Supp. 1430, 1436 n. 4 (D.Alaska 1992), *aff'd*, 36 F.3d 1439 (9th Cir.1994).

and idea expression"). Because the Court finds that no reasonable jury could conclude that "Independent Lady" and "Independent Women (Part I)" are substantially similar, it shall grant Defendant's motion for summary judgment.

## B. Copyright—Generally

The United States Code defines those works to which copyright protection may be extended.

> Copyright protection subsists ... in original works of authorship fixed in any tangible medium of expression, now known or later developed, from which they can be perceived, reproduced, or otherwise communicated, either directly or with the aid of a machine or device. Works of authorship include ... musical works, including any accompanying words.

17 U.S.C. § 102(a)(2) (1996). The Code also limits the extent to which the protection may be had: "[i]n no case does copyright protection for an original work of authorship extend to any idea, procedure, process, system, method of operation, concept, principle, or discovery, regardless of the form in which it is described, explained, illustrated, or embodied in such work." *See* 17 U.S.C. § 102(b); *see also Shaw v. Lindheim*, 919 F.2d 1353, 1356 (9th Cir.1990) ("Copyright law protects an author's expression; facts and ideas within a work are not protected.").[3]

Under Title 17, six exclusive rights with respect to copyright exist, violation of which support a cause of action. These rights are the rights:

(1) to reproduce the copyrighted work in copies or phonorecords;

(2) to prepare derivative works based upon the copyrighted work;

(3) to distribute copies or phonorecords of the copyrighted work to the public by sale or other transfer of ownership, or by rental, lease, or lending;

(4) in the case of literary, musical, dramatic, and choreographic works, pantomines, and motion pictures and other audiovisual works, to perform the copyrighted work publicly;

(5) in the case of literary, musical, dramatic, and choreographic works, pantomines, and pictoral, graphic, or sculptural works, including the individual images of a motion picture or other audiovisual work, to display the copyrighted work publicly; and

(6) in the case of sound recordings, to perform the copyrighted work publicly by means of a digital audio transmission.

*See* 17 U.S.C. § 106 (1996 & Supp.2000). "Anyone who violates any of the exclusive rights of the copyright owner as provided by sections 106 through 121 ... is an infringer of the copyright...." 17 U.S.C. § 501(a) (1996 & Supp.2000).

■ "To prove a case of copyright infringement, [Plaintiff] must prove both ownership of a valid copyright and infringement of that copyright by invasion of one of the ... exclusive rights." *Dr. Seuss Enters. v. Penguin Books USA, Inc.*, 109 F.3d 1394, 1398 (9th Cir.1997). In the case at hand, copyright in "Independent Lady" has already been established.

---

**3.** Upon remand by the Ninth Circuit, the United States District Court for the Central District of California reexamined *Shaw*. *See* 809 F.Supp. 1393 (C.D.Cal.1992). There, the Court found insufficient similarity to create a genuine issue of fact and granted summary judgment. *See id.* at 1404. Plaintiff argues that Defendant has mischaracterized the holding in *Shaw*, and accuses Defendant of professional misconduct. *See* Docket No. 14 at 10, 18. The Court finds no such "shocking omission" to have occurred, and instead suggests that Plaintiff consider the date of decision of the case cited by Defendant. *See* Docket No. 16 at 7.

*See* Docket No. 10, Ex. A. Plaintiff must therefore prove that copyright infringement has occurred. "Because direct copying is difficult to prove, a plaintiff can satisfy the second element by demonstrating that (a) the defendant had access to the allegedly infringed work and (b) the two works are substantially similar in both idea and expression of that idea." *Pasillas*, 927 F.2d at 442.[4] Access having been established for the purpose of a motion for summary judgment, *see* Docket No. 10 at 6–7, Plaintiff must prove only "substantial similarity." *See Pasillas*, 927 F.2d at 442.

Under the test established by the Ninth Circuit Court of Appeals in *Sid & Marty Krofft Television Prods., Inc. v. McDonald's Corp.*, 562 F.2d 1157 (9th Cir. 1977), the finder of fact was required to find both a "similarity of ideas" (known as the "extrinsic" test), and a likelihood that a "'ordinary reasonable person' would perceive a substantial taking of protected expression" (the "intrinsic" test). *See Krofft*, 562 F.2d at 1164. Under the current modification of that bifurcated standard, courts now analyze the question of substantial similarity by looking at two prongs. The extrinsic test, an objective standard, looks at whether substantial similarity exists between the ideas and expression of the two works. Upon satisfaction of that test, the intrinsic and subjective test looks to the reasonable person's notion of whether the initial expression was (a) protected and (b) substantially taken. *See Seuss*, 109 F.3d at 1398. The Court agrees with Defendant that these prongs are properly applied to both of Plaintiff's claims. *See* Docket No. 10 at 7 n.2.[5]

## C. Copyright Infringement—Unauthorized Use

### 1. The Extrinsic Test

■ Plaintiff complains that "a substantial and/or striking similarity" exists between the lyrics of her song and those of Defendant. *See* Docket No. 1 at 5–10.[6] Using what the Ninth Circuit deems "analytic dissection,"[7] Plaintiff breaks down the alleged similarities between the works into the following seventeen categories: format, narration, "narrated tale or scenario," theme, subject matter, "underlying idea or truth that gives direction and pur-

---

**4.** "'Substantial similarity' refers to similarity of expression, not merely similarity of ideas or concepts." *Seuss*, 109 F.3d at 1398.

**5.** This case thus differs from one in which a concept or word is further protected by statute, *cf. San Francisco Arts & Athletics, Inc. v. United States Olympic Comm.*, 483 U.S. 522, 107 S.Ct. 2971, 97 L.Ed.2d 427 (1987) (describing the copyright status of the word "Olympic" as regulated by the Lanham Act, 15 U.S.C. §§ 1051–1072), or trademark regulations, *cf. Seuss*, 109 F.3d 1394 (discussing the interplay between First Amendment and copyright concerns). The Court notes Plaintiff's concern that cases cited in support of Defendant's argument have factual premises which differ from that of the case at hand. *See* Docket No. 14 at 9–10. However, for the purpose of analysis, the Court finds that a similar test is established for use as to a wide variety of copyrighted material.

**6.** Plaintiff does not claim any similarity between the music or the presentation of the two "songs," however. Thus, the relevant comparison is between words and verbal phrases, and not between notes and musical phrases.

**7.** *See Seuss*, 109 F.3d at 1398 n. 3 ("'Analytic dissection' focuses on isolated elements of each work to the exclusion of the other elements, combination of elements, and expressions therein."); *Apple Computer, Inc. v. Microsoft Corp.*, 35 F.3d 1435, 1443 (9th Cir. 1994) ("Because only those elements of a work that are protectable and used without the author's permission can be compared when it comes to the ultimate question of illicit copying, we use analytic dissection to determine the scope of copyright protection before works are considered as a whole.") (internal quotation omitted).

pose to the song," moral, incident, causal connection, structure, character, motivation, "dominant psychological peculiarities," name, setting, "peculiar arrangement of words," and "peculiar phrasing of passages." *See* Docket No. 14 at 12–13. While Plaintiff has no trouble showing that the format (song) and narrator's gender (female) are substantially similar, the rest of her argument falls flat. Aside from being repetitive (the Court finds no noteworthy difference between the categories of similar scenario, similar incident, and causal connection, nor between "theme" and "underlying idea or truth that gives direction and purpose to the song"), the comparisons fail to elucidate the requisite level of affinity. For the reasons expounded below, the Court finds Plaintiff's argument in this regard to be off-key.

### a. scenario, incident, causal connection & motivation

Plaintiff's song appears to have as its "scenario" a central "incident" (and, as described above, a "causal connection")—a last straw convincing her to end her relationship, which also serves as the "motivation" at play. *See* Docket No. 1, Ex. 2 ("After all that we've been / through there's just one thing / left to do to retain my dignity / And to make you see / I'm just [an] Independent Lady."). In Plaintiff's song, the woman appears to leave the relationship behind. *See id.* ("I'm taking back my pride .... Being alone won't bring me pain"). By contrast, "Independent Women (Part I)" says nothing about an imminent break-up or even the establishment of a committed relationship in the first place; rather, the song seems to depict an encounter-based connection between the narrator and the man with whom she has occasional sexual relations. *See id.,* Ex. 3 at 1 ("Only ring your cell-y when I'm feelin lonely"). These disparate

depictions cannot be considered "substantially similar."

### b. theme

Neither is the theme of the two works in sync. *See Sony Pictures Entm't, Inc. v. Fireworks Entm't Group, Inc.,* 137 F.Supp.2d 1177 (C.D.Cal.2001). In *Sony Pictures,* the company complained that its "Zorro" copyright had been infringed by the television series "Queen of Swords," based on "a daughter of Zorro concept." *See id.* at 1182 (internal quotation omitted). The court found that where Sony Pictures complained that the theme of both works was "overcoming the desire for personal revenge and instead opposing evil by assisting the poor and disadvantaged" but pointed "to no further evidence of thematic similarity," *see id.* at 1190 (internal quotation omitted), such theme "in itself is but an unprotectable idea." *See id.* In the case at bar, Plaintiff contends that "[t]he central theme of the lyrics of both songs is the independence of the narrator," *see* Docket No. 1 at 7, yet alleges no further specifics. On the record before it, the Court finds that the theme of a woman striving for emotional independence from a relationship with significant history as depicted in "Independent Lady" is not substantially similar to "Independent Women (Part I)"'s apparent theme of financially independent young women encouraging other women to support themselves and not be financially dependant on a man or a group of men.

Even accepting Plaintiff's contention that the songs are both premised on the same theme, such a general idea as independence is not itself protected by copyright. *See* 17 U.S.C. § 102(b); *see also Shaw,* 919 F.2d at 1356. As Defendant takes pains to illustrate, "independence" is a commonplace theme in song. *See* Docket No. 10 at 10–11. So, too, has the theme

of financially independent women been in and on the air for decades:

> Take back your mink, take back your pearls / What made you think that I was one of those girls? / Take back the gown, the shoes and the hat / I may be down, but I'm not as flat as all that. / I thought that each expensive gift you'd arrange was a token of your esteem / Now when I think of what you want in exchange / It all seems a horrible dream / so ... take back your mink, to from whence it came / and tell them to shorten the sleeves on it, for somebody else!

*See* Frank Loesser, *Take Back Your Mink, on* Guys and Dolls (Original Broadway Cast Recording) (Decca Records 1950). Were Plaintiff to own the copyright to all other songs depicting the tale of a woman rejecting a man's dominance, she would most certainly be among the wealthiest of troubadours in the land.

### c. subject matter

Nor is the subject matter of the two songs in harmony. Plaintiff asserts that both songs "involve a general warning to a man not to try to control the narrator." *See* Docket No. 1 at 7. Although the Court disagrees with her characterization of the works, it is nonetheless obligated to consider the facts of the case in the light most favorable to Plaintiff. However, even if both songs are said to have this same subject matter, such diffuse imagery is not protected under Plaintiff's copyright. *See* 17 U.S.C. § 102(b); *Kouf v. Walt Disney Pictures & Television*, 16 F.3d 1042, 1045 (9th Cir.1994) ("General plot ideas are not protected by copyright law.") (internal quotation and citation omitted).

### d. structure

Plaintiff further contends that "[s]imilar structural devices, such as questions, declarations, [and] speaking to the future" are employed in both songs. *See* Docket No. 14 at 12. While it is true that both pieces of writing contain questions, *compare* Docket No. 1, Ex. 2 ("CAN'T YOU SEE? ?") *with id.,* Ex. 3 at 2 ("Wassup?"), "Independent Lady" contains only one, *see id.,* Ex. 2, and it is far more rhetorical in nature than are those employed in Defendant's song. In addition, the bulk of "questions" in "Independent Women (Part I)" are formatted with the use of a colon after the word "question" and do not conclude with a question mark. *See id.,* Ex. 3 at 1 ("Question: How'd you like this knowledge that I brought").

Moreover, despite Plaintiff's assertion that "[b]oth songs start the first stanza with a phrase that poses a question," *see* Docket No. 1 at 7, the Court notes that "I've just been wondering" is not an interrogative. *See id.,* Ex. 2. Plaintiff's allegation that "[b]oth songs pose another question at the end of the principal verses," *see id.* at 7, is equally wrong: Plaintiff's ("CAN'T YOU SEE? ?") comes just before the end of "Independent Lady," whereas Destiny's Child employs a total of four separate questions. *See id.,* Ex. 3 at 1–2 ("Who would I want if I would wanna live;" "How'd you like this knowledge that I brought;" "Wassup;" "You in the house?"). Finally, the fact that declarations exist in both pieces is hardly remarkable, and were "speaking to the future" a structural device warranting copyright protection, any woman hoping for anything, be it independence (financial or emotional), a mink, pearl, or "cell-y," would be artistically stifled in the expression of her wish.

### e. character

With regard to the alleged copying of the speaker's character, even were the songs both written about a female recently separated from her lover, such similarity is not at all specific enough to meet the

"substantial" threshold. Courts faced with far more explicitly drawn characters have found no such similarity to exist. *See Kouf*, 16 F.3d at 1046 (finding that "the genius kid with thick-rimmed glasses ... is not distinctive enough to be a protectible character").

It is also worth noting that while "Independent Lady" is clearly directed at a specific "man who is, or has been in the past, too controlling," *see* Docket No. 1 at 7, there is no evidence that "Independent Women (Part I)" is necessarily directed at one "character" in particular. Rather, it appears that the song is split between addressing other women (including Lucy Liu, Drew Barrymore, Cameron Diaz, and members of both Destiny's Child and their audience) and addressing Charlie Townsend, the Angels' boss, himself. *See id.*, Ex. 3 at 1 ("All the women who are independent / Throw your hands up at me"); *id.* ("Ladies, it ain't easy bein' independent ... If you're gonna brag make sure it's your money you flaunt / Depend on [no one] else to give you what you want"); *id.* ("Charlie, how your Angels get down like that").

### f.  psychological peculiarities

Plaintiff has not shown how the "dominant psychological peculiarities of the two characters (the narrator, and the man she is addressing)" are similar, nor does the Court believe such a showing to be possible: neither song gives any indication as to the psychology of the man involved.

### g.  name

Plaintiff has failed to show that her use of the word "destiny" constitutes a "similar name[ ]." *See* Docket No. 14 at 13. While Plaintiff uses the word as a common noun, Defendant employs it as the personification of a maternal element. *Compare* Docket No. 1, Ex. 2 ("For your love is not enough / to control my destiny"), *with id.*, Ex. 3 at 2 ("Child of Destiny"). The Court knows of no authority for the proposition that an individual word of common vernacular not covered by the Lanham Act may be copyrighted so as to bar its usage.

### h.  peculiar arrangement of words

To tell a story, unless one is repeating or reciting the tale, necessarily involves the arrangement of words. Plaintiff has provided no explanation for her statement that the songs employ a "similar peculiar arrangement of words" (to say nothing of how an arrangement can be concomitantly similar and peculiar). *See* Docket No. 14 at 13. She attempts to argue that *Santrayll v. Burrell*, No. 91 Civ. 3166, 1996 WL 134803 (S.D.N.Y. Mar.25, 1996), a New York matter in which lyrics were found to have violated copyright infringement laws, controls this case.

In *Santrayll*, the parties argued as to whether or not "the relevant portion of the songs, the one measure 'hook,' consisting of the word 'uh-oh' repeated four times to a particular rhythm" is copyrighted. *See Santrayll*, 1996 WL 134803, at *2. There, the United States District Court for the District of New York quoted the Second Circuit's description of copyrightable elements:

> "the cornerstone of that law is that the work protected must be original. Thus, that a whole work is copyrighted does not mean that every element of it is copyrighted; copyright protection extends only to those components of the work that are original to the creator. But the quantity of originality that need be shown is modest—only a dash will do."

*See id.* (quoting *Rogers v. Koons*, 960 F.2d 301, 307 (2d Cir.1992)). *Santrayll* found "that the repetition of the non-protectible word 'uh-oh' in a distinctive rhythm com-

prises a sufficiently original composition to render it protectible by the copyright laws." *See id.; see also Apple*, 35 F.3d at 1445 (citing *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 348–51, 111 S.Ct. 1282, 113 L.Ed.2d 358 (1991)). However, *Santrayll*'s holding has little bearing on this litigation as Plaintiff has not, nor could she credibly allege substantial similarity between arrangement or rhythm of the two songs here at issue—the audio recording of her song enjoys no copyright. Instead, Plaintiff points to a clearly "non-protectible" word, "destiny." *See Kouf*, 16 F.3d at 1046 (affirming summary judgment grant where linguistic similarities were "similar in random words, at best").[8]

**i. setting**

Plaintiff's assertion that the "setting" of the two works is substantially similar because they both take place in the "narrator's world" is untenable. *See* Docket No. 14 at 13. Plaintiff would be hard-pressed to find a narrator who did not narrate from her own point of view, or "world." Indeed, the very word implies a telling from one's own perspective.

**j. peculiar phrasing**

Perhaps most untenable, however, is Plaintiff's claim that the two songs enjoy "similar peculiar phrasing of passages." *See id.* Whereas "Independent Lady" is comprised of five stanzas with varying syllabic meter, "Independent Women (Part I)" has two prominent stanzas, separated by a chorus constructed of three distinct refrains. *See* Docket No. 1, Ex. 3 at 1–2 (refrains beginning "The shoes on my feet," "All the women who are indepen-

dent," and "Girl I didn't know you could get down like that"). By way of a chorus, Plaintiff's song duplicates only two words, "independent" and "lady." *See id.*, Ex. 2 (lines stating "I'm just [an] / Independent Lady" and "I've got to be / An Independent Lady"). "Independent Women (Part I)" thus relies far more heavily on the use of repetition than does "Independent Lady." Beyond this comparison, the Court finds no other parallel lending itself to a discussion of "phrasing."

Beyond being songs sung by women, this Court is unable to find substantial similarity between the two works under the extrinsic test. Plaintiff "has failed to demonstrate a triable issue of fact." *See Kouf*, 16 F.3d at 1046.

**2. The Intrinsic Test**

This test "looks for substantial similarity in the total concept and feel of two works" as observed by an "ordinary reasonable" observer. *See Sony Pictures*, 2001 WL 370146, at *4 (internal quotation and citation omitted). Because, for the reasons enunciated above, the Court finds there to be no material question as to whether a jury could find such similarity to exist, it shall grant Defendant's motion as to Plaintiff's first claim. *See Kouf*, 16 F.3d at 1045.

**D. Copyright Infringement—Unauthorized Derivative**

Plaintiff alleges that "[t]o the extent that Sony made sufficient alterations in Plaintiff's copyrighted song . . . so as to avoid being charged with infringement under the 'substantial similarity' rule, Sony in effect

---

**8.** If Plaintiff feels she is due royalties for the trio's use of a single word, one can only imagine how Peter Cetera feels about Plaintiff's use of the entire phrase "after all that we've been through," a key element in the chorus of two of his hit songs, *see, e.g.,* Peter

Cetera, *After All, on* Collection (Polygram 1997); Chicago, *Hard To Say I'm Sorry, on* Summer Lovers (Warner Brothers 1982), let alone her use of that phrase as evidence of another's infringement. *See* Docket No. 1 at 8.

prepared a derivative work of Plaintiff's copyrighted song." *See* Docket No. 1 at 11. Under 17 U.S.C. § 101,

> A "derivative work" is a work based upon one or more preexisting works, such as a translation, musical arrangement, dramatization, fictionalization, motion picture version, sound recording, art reproduction, abridgment, condensation, or any other form in which a work may be recast, transformed, or adapted. A work consisting of editorial revisions, annotations, elaborations, or other modifications which, as a whole, represent an original work of authorship is a "derivative work".

*See* 17 U.S.C. § 101 (1996 & Supp.2000). Having found there to be no material question of fact with regard to substantial similarity, the Court cannot find a copyright violation under 17 U.S.C. § 101, and shall grant Defendant's motion as to Plaintiff's second cause of action. *See Seuss,* 109 F.3d at 1397–98. No injunctive relief shall issue.[9]

### E. Frivolous Claims

In a twist of sophistic irony, Plaintiff alleges that Defendant's motion for summary judgment was "frivolous, vexatious, and so obviously untenable that full attorney fees are appropriately awarded to Plaintiff for defending against it." *See* Docket No. 14 at 2. Rather, the Court finds Plaintiff's claim that "[t]he similarities of the two songs are so striking and of such nature as to preclude the possibility of coincidence, accident, or independent creation," *see* Docket No. 1 at 10, to be as frivolous as it is disingenuous. Such actions expend needlessly the efforts of the Court, defending parties and counsel, and the numerous resources attached thereto. To the detriment of his clients, the attorney who brings such cases to court raises false hopes of success in the litigants and needlessly prolongs the aggravation which a lawsuit often foments in its participants. As a fiduciary, it is as much the attorney's responsibility to vigorously represent his clients as it is to counsel potential litigants of ill-conceived claims.

At this time, Defendant has not brought a motion for sanctions in this regard. It has, however, made a request for the award of attorney fees pursuant to 17 U.S.C. § 505. *See* Docket No. 10 at 18–19.

### F. Attorney Fees

Section 505 affords the discretionary "recovery of full costs by or against any party," and the award of "a reasonable attorney's fee to the prevailing party as part of the costs." *See* 17 U.S.C. § 505. Because prevailing on a motion for summary judgment does not qualify Plaintiff as a "prevailing party" under the plain meaning of the rule, the Court denies Plaintiff's motion for attorney fees on that basis, and will instead grant Defendant's request for an award pursuant to 17 U.S.C. § 505 upon proper motion.

### CONCLUSION

Plaintiff contends that Defendant's access to her song and subsequent release of

---

**9.** To obtain a preliminary injunction, the moving party must show either (1) a combination of probable success on the merits and the possibility of irreparable injury, or (2) that serious questions are raised and the balance of hardships tips sharply in its favor. These formulations are not different tests but represent two points on a sliding scale in which the degree of irreparable harm increases as the probability of success on the merits decreases.

Under either formulation, the moving party must demonstrate a significant threat of irreparable injury, irrespective of the magnitude of the injury.

*Big Country Foods, Inc. v. Bd. of Educ.,* 868 F.2d 1085, 1088 (9th Cir.1989) (internal citation omitted). No copyright violation having occurred, there is neither a probability of success on the merits, nor a threat of harm to Plaintiff.

a similarly titled piece is indicative of the violations alleged. The Court sympathizes with Plaintiff's feeling that she has been wronged. Plaintiff has no doubt been bolstered in this belief by her attorney's conduct. For this, the Court finds a good deal of fault to lie with Plaintiff's counsel. While Plaintiff may be unsophisticated in the ways of legal redress, her attorney should certainly have recognized that no support or authority exists on which to grant Plaintiff legal remedy here. Nonetheless, the Court suggests that Plaintiff move past her ill-feelings toward Defendant: the question of whether Plaintiff will be "taking back her pride" is for her own determination.

The question of copyright infringement is for this Court to determine, however, and the Court now holds that, finding no basis for Plaintiff's copyright claims, Defendant is entitled to its mink, pearls, and summary judgment.

**IT IS THEREFORE ORDERED:**

Plaintiff's request for oral argument at **Docket No. 13** is **DENIED.** Plaintiff's motion for attorney fees at **Docket No. 14** is **DENIED.** Defendant's motion for summary judgment at **Docket No. 10** is **GRANTED.** This action is hereby **DISMISSED WITH PREJUDICE.** Judgment shall issue. On or before **Friday, June 1, 2001,** Defendant shall file a motion for attorney fees, detailing those fees to be assessed. *See* D. Ak. L.R. 54.3.